# 25-422

## United States Court of Appeals for the Second Circuit

THE EVERGREEN ASSOCIATION, INC.,

*Plaintiff-Appellant,*

v.

KATHY HOCHUL, in her official capacity as the Governor of the State of New York, ROBERTA REARDON, in her official capacity as the Commissioner of the Labor Department of the State of New York, and LETITIA JAMES, in her official capacity as the Attorney General of the State of New York,

*Defendants-Appellees.*

On Appeal from the United States District Court for the Northern District of New York

**BRIEF FOR DEFENDANTS-APPELLEES**

LETITIA JAMES
  *Attorney General*
  *State of New York*
Attorney for Appellees
The Capitol
Albany, New York 12224
(518) 776-2017

BARBARA D. UNDERWOOD
  *Solicitor General*
ANDREA OSER
  *Deputy Solicitor General*
DUSTIN J. BROCKNER
  *Assistant Solicitor General*
    *of Counsel*

Dated: July 25, 2025

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................... iv

PRELIMINARY STATEMENT ................................................................... 1

QUESTIONS PRESENTED ....................................................................... 3

STATEMENT OF THE CASE ..................................................................... 4

    A.   New York Labor Law § 203-e ..................................................... 4

    B.   Plaintiff's Operations ................................................................ 7

    C.   Proceedings Below .................................................................. 11

        1.   The Complaint and the Prior Appeal ............................ 11

        2.   The Parties' Cross-Motions for Summary Judgment and the District Court's Decision ................................... 13

    D.   Relevant Proceedings in Other Cases ................................... 17

        1.   This Court's Intervening Decision in *CompassCare* ....... 17

        2.   Plaintiff's Challenge to New York City's Local Law Being Heard in Tandem with this Appeal ...................... 18

STANDARD OF REVIEW ....................................................................... 20

SUMMARY OF ARGUMENT ................................................................... 21

ARGUMENT ......................................................................................... 24

POINT I

    THE COURT SHOULD AFFIRM ON THE GROUND THAT PLAINTIFF'S CLAIM IS NOT JUSTICIABLE ................................................................ 24

i

**Page**

A.  Plaintiff Lacks Standing to Bring a Pre-Enforcement Challenge to a Law That It Is Unlikely to Violate. ................ 24

    1.  Plaintiff Failed to Proffer Concrete, Non-Speculative Evidence That It Will Violate § 203-e's Anti-Discrimination Provision in the Near Future. ................ 26

    2.  Plaintiff's Reliance on § 203-e's Other Provisions to Assert That It Will Likely Violate the Statute Is Unpreserved and Meritless. ................ 32

    3.  Plaintiff Does Not In Any Event Face a Credible Threat of Imminent Enforcement by Any Defendant ................ 38

B.  Plaintiff's Claim Is Not Ripe for Review ................ 45

POINT II

ALTERNATIVELY, THE COURT SHOULD EITHER REMAND TO THE DISTRICT COURT TO ADDRESS IN THE FIRST INSTANCE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON THE MERITS OR IT SHOULD AFFIRM ON THE MERITS ................ 47

A.  The Court Should Follow Its Settled Practice by Remanding to the District Court to Address the Merits in the First Instance. ................ 47

B.  The Court Could Instead Affirm Summary Judgment in Defendants' Favor on the Alternative Ground that Plaintiff's Claim Fails on the Merits. ................ 49

POINT III

THE COURT SHOULD NOT DISTURB SO MUCH OF THE JUDGMENT BELOW AS DENIED SUMMARY JUDGMENT TO PLAINTIFF ................ 59

ii

**Page**

CONCLUSION ................................................................................... 64

CERTIFICATE OF COMPLIANCE

iii

# TABLE OF AUTHORITIES

**Cases**                                                    **Page(s)**

*Adam v. Barr,*
   792 F. App'x 20 (2d Cir. 2019) ........................................................... 39

*Agosto v. New York City Dep't of Educ.,*
   982 F.3d 86 (2d Cir. 2020) ......................................................... 33, 36

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986) ............................................................................ 21

*Ashcroft v. ACLU,*
   542 U.S. 656 (2004) ........................................................................... 57

*Atterbury v. U.S. Marshals Serv.,*
   805 F.3d 398 (2d Cir. 2015) ............................................................. 48

*Baltas v. Maiga,*
   119 F.4th 255 (2d Cir. 2024) ............................................................ 47

*Beck v. Manhattan Coll.,*
   136 F.4th 19 (2d Cir. 2025) .............................................................. 30

*Boy Scouts of Am. v. Dale,*
   530 U.S. 640 (2000) ...................................................................... 57-58

*Burwell v. Hobby Lobby Stores, Inc.,*
   573 U.S. 682 (2014) ........................................................................... 52

*Cavanaugh v. Geballe,*
   28 F.4th 428 (2d Cir. 2022) .............................................................. 48

*Cayuga Nation v. Tanner,*
   824 F.3d 321 (2d Cir. 2016) ............................................................. 39

*Christian Healthcare Centers, Inc. v. Nessel,*
   117 F.4th 826 (6th Cir. 2024) .......................................................... 45

*Clapper v. Amnesty Int'l,*
   568 U.S. 398 (2013) ..................................................................... 24, 28

iv

| **Cases** | **Page(s)** |
|---|---|

*CompassCare v. Hochul,*
125 F.4th 49 (2d Cir. 2025)............................... 17-18, 23, 48, 51, 60-61

*Doe v. City of New York,*
15 F.3d 264 (2d Cir. 1994) ...................................................................... 50

*E.E.O.C. v. R.G. & G.R. Harris Funeral Homes, Inc.,*
884 F.3d 560 (6th Cir. 2018)......................................................... 51, 55

*Elias Bochner, 287 7th Ave. Realty LLC v. City of New York,*
118 F.4th 505 (2d Cir. 2024)................................................... 25, 44, 60

*Evergreen Ass'n, Inc. v. City of New York,*
No. 20 Civ. 0580, 2025 WL 416903 (E.D.N.Y. Feb. 6, 2025)... 18-20, 29

*Fac. v. New York Univ.,*
11 F.4th 68 (2d Cir. 2021)...................................................................... 27

*FDA v. All. for Hippocratic Med.,*
602 U.S. 367 (2024).......................................................... 24, 26-27, 38

*Figueroa v. Foster,*
864 F.3d 222 (2d Cir. 2017) ................................................................. 51

*Fulton v. City of Philadelphia,*
593 U.S. 522 (2021).............................................................................. 56

*Gazzola v. Hochul,*
88 F.4th 186 (2d Cir. 2023)................................................................... 44

*Gonzales v. O Centro Espirita Beneficente Uniao
do Vegetal,*
546 U.S. 418, 433 (2006)...................................................................... 56

*Haaland v. Brackeen,*
599 U.S. 255 (2023).............................................................................. 24

*Hancock v. Cnty. of Rensselaer,*
882 F.3d 58 (2d Cir. 2018) ................................................................... 50

v

| **Cases** | **Page(s)** |
|---|---|

*Havens v. James,*
  76 F.4th 103 (2d Cir. 2023)......................................................... 47

*Hayes v. Dahlke,*
  976 F.3d 259 (2d Cir. 2020) ................................................. 20, 59

*Hedges v. Obama,*
  724 F.3d 170 (2d Cir. 2013) ...................................................39-40

*Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC,*
  565 U.S. 171 (2012)............................................................... 53, 56

*Hussein v. Maait,*
  129 F.4th 99 (2d Cir. 2025)......................................................... 26

*Indiana Right to Life Victory Fund v. Morales,*
  66 F.4th 625 (7th Cir. 2023) ...................................................... 30

*Jacoby & Meyers, LLP v. Presiding Justices,*
  852 F.3d 178 (2d Cir. 2017) ....................................................... 49

*Knife Rts., Inc. v. Vance,*
  802 F.3d 377 (2d Cir. 2015) ....................................................... 39

*Lacewell v. Off. of Comptroller of Currency,*
  999 F.3d 130 (2d Cir. 2021) ...................................................45-46

*Lawrence v. Texas,*
  539 U.S. 558 (2003)..................................................................... 50

*Lugo v. City of Troy,*
  114 F.4th 80 (2d Cir. 2024).......................................................... 60

*Maraschiello v. City of Buffalo Police Dep't,*
  709 F.3d 87 (2d Cir. 2013) .......................................................... 57

*McKesson v. Doe,*
  592 U.S. 1 (2020).......................................................................... 30

| Cases | Page(s) |
|---|---|

*Nat'l Inst. for Fam. & Life Advocs. v. James*,
746 F. Supp. 3d 100 (W.D.N.Y. 2024)................................................... 41

*Nat'l Org. for Marriage, Inc. v. Walsh*,
714 F.3d 682 (2d Cir. 2013) ........................................................... 48

*Picard v. Magliano*,
42 F.4th 89 (2d Cir. 2022)............................................................. 39

*Revitalizing Auto Communities Env't Response Tr. v. Nat'l Grid U.S.A.*,
10 F.4th 87 (2d Cir. 2021)............................................................. 45

*Roberts v. U.S. Jaycees*,
468 U.S. 609 (1984)................................................................51-52

*Simmonds v. I.N.S.*,
326 F.3d 351 (2d Cir. 2003) ........................................................... 46

*Simon & Schuster, Inc. v. Members of New York State Crime Victims Bd.*,
502 U.S. 105 (1991).................................................................. 55

*Slattery v. Cuomo*,
531 F. Supp. 3d 547 (N.D.N.Y. 2021) ................................................. 12

*Slattery v. Hochul*,
61 F.4th 278 (2d Cir. 2023)........................ 12, 33, 36-37, 40, 53, 57-58

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014).......................................................... 25, 44, 46

*Tabbaa v. Chertoff*,
509 F.3d 89 (2d Cir. 2007) ................................................... 49, 57, 60

*United States v. Burke*,
504 U.S. 229 (1992)................................................................... 51

*Vitagliano v. Cnty. of Westchester*,
71 F.4th 130 (2d Cir. 2023)........................................................ 39, 42

**Cases**                                                                    **Page(s)**

*Whalen v. Roe,*
    429 U.S. 589 (1977)................................................................................50

**Constitutions**

N.Y. Const., art. I, § 11(a) ........................................................................51

**State Statutes**

Cal. Gov't Code
    § 12940(a).........................................................................................54

D.C. Code
    § 2-1401.05(a)...................................................................................55

Del. Code
    tit. 19, § 711(j) ..................................................................................55

Haw. Rev. Stat.
    § 378-2(a)(1) ....................................................................................55

Ill. Comp. Stat.
    ch. 775, § 5/1-103(O-2) ...................................................................54
    ch. 775, § 5/1-103(Q) ......................................................................54
    ch. 775, § 5/2-102(A)........................................................................54

Mich. Comp. Laws
    § 37.2201(d).....................................................................................54
    § 37.2202(1)(a).................................................................................54

N.Y.C. Admin. Code
    § 8-107(1)(a)(2) ...............................................................................43

N.Y. Executive Law
    § 296(1)(a) .................................................................................. 43, 51

**State Statutes**                                                    **Page(s)**

N.Y. Labor Law
    § 2(5) ...................................................................................... 43
    § 201-i(2) ................................................................................ 43
    § 201-b(1) ............................................................................... 43
    § 201-b(2) ............................................................................... 43
    § 201-d(2) ............................................................................... 43
    § 203-e ............................................................................. passim
    § 203-e(1) .............................................................. 5, 12, 32, 52
    § 203-e(2)(a) ......................................................... 4, 26, 32, 52
    § 203-e(2)(b) ............................................................... 5, 35, 52
    § 203-e(3) ...................................................................... 12, 44
    § 203-e(3)(a)–(d) ........................................................................ 5
    § 203-e(3)(b) ........................................................................... 37

**Rules**

Fed. R. Civ. P.
    12(b)(6) .................................................................................... 12
    56(a) ......................................................................................... 20

## PRELIMINARY STATEMENT

New York State Labor Law § 203-e prohibits employers from discriminating against employees based on their reproductive health decisions. In this pre-enforcement challenge to § 203-e, plaintiff Evergreen Association, Inc. ("Evergreen")[1] alleged that the law violates its rights to expressive association, free speech, and free exercise. In a prior appeal in this case, this Court held at the pleadings stage that plaintiff failed to state a claim for relief, except for its expressive-association claim, and remanded for further proceedings on that claim.

Following discovery, defendants—Governor Kathy Hochul, Attorney General Letitia James, and New York State Department of Labor Commissioner Roberta Reardon—moved for summary judgment, and plaintiff cross-moved for summary judgment. The United States District Court for the Northern District of New York (Nardacci, J.) granted summary judgment in defendants' favor. The court held that plaintiff lacked standing and that its claim was not ripe because plaintiff failed to

---

[1] Although plaintiff Chris Slattery was initially a party, he died in 2023, leaving Evergreen as the sole remaining plaintiff.

proffer evidence sufficient to suggest a credible threat of imminent enforcement of § 203-e against it.

The Court should affirm. As the district court correctly concluded, it is entirely speculative whether plaintiff will ever violate § 203-e, let alone do so imminently. Despite operating since 1985, plaintiff has *never* taken an adverse employment action based on an individual's reproductive health decision. And plaintiff fails to cite any non-speculative evidence to suggest that it will likely take such action for the first time in the near future and thereby violate § 203-e. Thus, there is no reason to think that plaintiff faces a credible threat of imminent enforcement, and plaintiff failed to present a justiciable controversy.

If the Court nonetheless concludes that plaintiff's claim is justiciable, the Court should either adhere to its settled practice and remand to the district court to consider the merits of plaintiff's claim in the first instance or affirm on the alternative ground that plaintiff's claim fails on the merits. In no event should the Court disturb the district court's judgment denying plaintiff summary judgment, let alone grant summary judgment in plaintiff's favor, as plaintiff urges here.

2

## QUESTIONS PRESENTED

1.     Whether the district court correctly held that plaintiff's claim is nonjusticiable for lack of standing and ripeness because plaintiff failed to proffer concrete, non-speculative evidence that it will likely violate § 203-e any time soon or that it otherwise faces a credible threat of imminent enforcement of that statute.

2.     In the event that the Court holds that plaintiff's claim is justiciable, whether the Court should either follow its settled practice and remand to the district court to consider in the first instance the merits of plaintiff's claim, or affirm on the alternative ground that plaintiff's claim fails on the merits because § 203-e satisfies strict scrutiny—the highest form of scrutiny that could apply.

3.     Whether at the very least the Court should affirm so much of the judgment below as denied plaintiff's summary judgment motion, given that plaintiff failed to show—as a matter of law—either that it has standing or that § 203-e is unconstitutional as applied to plaintiff.

## STATEMENT OF THE CASE

### A.     New York Labor Law § 203-e

New York protects employees by barring employers from interfering in certain private medical decisions. Under New York Labor Law § 203-e, which took effect in 2019, employers may not discriminate or retaliate against any employee based on "the employee's or dependent's reproductive health decision making, including, but not limited to, a decision to use or access a particular drug, device, or medical service." N.Y. Labor Law § 203-e(2)(a) (the "anti-discrimination provision"). Section 203-e is designed to ensure that employees' private decisions "about pregnancy, contraception, and reproductive health" are "protected under state law." (ECF No. 22-2 at 2 [Assembly sponsor's memorandum], ECF No. 22-3 at 2 [Senate sponsor's memorandum].[2])

Section 203-e includes other provisions to protect employees from unwanted intrusion into their medical decisions and to help combat discrimination based on those decisions. One provision requires an

---

[2] References to "ECF No." are to documents filed in this case in district court that are not reproduced in the Joint Appendix. They are denoted by docket entry number with pagination provided by PACER.

4

employer to obtain an employee's "prior informed affirmative written consent" before "accessing an employee's personal information regarding the employee's or the employee's dependent's reproductive health decision making." N.Y. Labor Law § 203-e(1) (the "access provision"). Another provision bars employers from circumventing the statute by requiring employees "to sign a waiver or other document which purports to deny an employee the right to make their own reproductive health care decisions." *Id.* § 203-e(2)(b) (the "no-waiver provision") And another provision grants employees a private right of action to sue for reinstatement and damages, as well as to obtain injunctive relief against any employer "that commits or proposes to commit a violation of the provisions of this section." *Id.* § 203-e(3)(a)–(d).

As the legislative history makes clear, § 203-e was enacted to further New York's existing policy of protecting its residents' privacy as to their reproductive health choices. As one of the bill's sponsors, Senator Jennifer Metzger, explained: "Choosing whether, when and how to have children is a decision for individuals and their families. No one should have fear that they will lose their job or be demoted because of their own

5

private reproductive health decisions." (Joint Appendix ["J.A."] 102 [Senate floor debate]).)

Speaking from the Assembly floor, Representative Ellen Jaffee—the law's sponsors in that chamber—noted that discrimination based on reproductive health decisions "happens quite frequently." (J.A. 315 [Assembly floor debate]). She referred to "a number of incidents where the employers have found information about personal . . . decisions, about contraception or certain reproductive health care" and then punished their workers. (J.A. 306 [Assembly floor debate]). Constituents had reached out to Representative Jaffe personally with such stories. (J.A. 331-332 [Assembly floor debate to predecessor bill to § 203-e].) Thus, as confirmed in the sponsors' memoranda, employees in New York were "vulnerable to discrimination based on their reproductive health decisions." (ECF No. 22-2 at 2; ECF No. 22-3 at 2.)

6

**B.** **Plaintiff's Operations[3]**

Plaintiff is a nonprofit organization that, since its founding in 1985, has continuously operated a "pregnancy care" center that is "pro-life." (J.A. 47-48.) Over the years, plaintiff has maintained offices at around fourteen locations across the country. (J.A. 48, 129.) Today, plaintiff maintains only three offices, all in New York City. (J.A. 390.) One office is used once or twice a month; the other two are used more frequently depending on patient load. (J.A. 390.)

Plaintiff provides a "medical model of service" (J.A. 394), which means it focuses on the medical aspect of a pregnancy (J.A. 160-161). Patients receive a urine pregnancy test and an ultrasound, the results of which one of plaintiff's staff discusses with the patient. (J.A. 152.)

Plaintiff's staff consists of six part-time employees. (J.A. 390-391.) One employee is a material coordinator who collects donated supplies, such as diapers, and provides those supplies to community organizations. (J.A. 393.) The coordinator has no face-to-face interactions with any patients. (J.A. 393.) Two employees are ultrasonographers, and two are

---

[3] The following facts are based on the parties' evidence on summary judgment and are undisputed unless otherwise noted.

7

Licensed Practical Nurses ("LPNs"), who review pregnancy diagnoses and imaging results with patients. (J.A. 391-392; *see also* J.A. 152.) The sixth employee is referred to as a "scheduler/counselor"; this position does not require any counseling background, and the duties entail answering telephone calls and scheduling appointments. (J.A. 391, 393.)

In deposition testimony, plaintiff's president, the Reverend James Harden, stated that plaintiff employs "people all the time" who have had abortions. (J.A. 206.) Further, as plaintiff admits, it will employ unmarried people who have not been abstinent. (J.A. 395.) Reverend Harden explained: "We don't expect to hire people who haven't had abortions. We don't expect to hire people that haven't had sex outside of marriage." (J.A. 236-237.) Rather, "[w]e expect to hire people that have the same beliefs," *i.e.,* pro-life beliefs. (J.A. 237.)

Plaintiff openly touts its "pro-life" beliefs and its refusal to employ anyone who is "pro-choice." (J.A. 49, 397.) As Reverend Harden testified, plaintiff is "very clear that we're looking for pro-life people." (J.A. 204.) He explained that plaintiff's job postings operate effectively as a "big filter"; the postings specify that plaintiff only employs those who support its pro-life mission. (J.A. 139; J.A. 74 [job posting stating that plaintiff is

8

looking for candidates "who actually believe in the pro-life cause"].) Plaintiff's interview process vets applicants to ensure they have "pro-life convictions," by inquiring into whether they are "pro-life" and "what makes [them] pro-life." (J.A. 140-141.)

Plaintiff also asks employees to sign a form entitled "Statement of Position, Faith & Principle." (J.A. 396; *see also* J.A. 82-85 [template form].) By signing the form, employees agree to plaintiff's "Positional Statements," including its position that every abortion claims an inno-cent. (J.A. 82.) The form, however, makes clear that plaintiff does not view every abortion in the same way. When "continued pregnancy is reasonably expected to precipitate the mother's immediate and literal death," plaintiff will "respect the decisions of the parents" as to whether to obtain an abortion. (J.A. 82.) The form also provides a blank space for employees to articulate "any variance" they may have with plaintiff's positions. (J.A. 82, 84.)

Reverend Harden explained that, before plaintiff began using the form, it told its employees that it expected them to follow "a code of conduct as it relates to kind of a Biblical ethic of sexuality" that is "traditionally pro-life." (J.A. 184-185, 396-397.)

9

Plaintiff does not maintain any policy or practice of monitoring employees to ensure their behavior outside of work conforms with plaintiff's values. On the contrary, Reverend Harden described plaintiff's approach as "mostly just an honor system." (J.A. 197-198, 210-211.)

Despite operating for over 40 years at over a dozen locations, plaintiff has never identified a single instance in which it took an adverse employment action because of an individual's reproductive health decision, such as an individual's decision to have an abortion. (*See* J.A. 394-395.) Indeed, plaintiff admits that it has *never* fired any employee because of the employee's own healthcare decisions or because the employee had an abortion or used birth control. (J.A. 394-395.) Nor has plaintiff changed an employee's job duties because of that employee's experience with abortion. (J.A. 395.) And plaintiff has not, and would not, take an adverse action against an employee based on the reproductive health decision of any employee's dependent. (J.A. 398.)

Plaintiff has not changed anything about its operations or its services because of § 203-e. (J.A. 398.) It also has "no concerns" that any of its current employees have acted contrary to plaintiff's beliefs, and it

10

is not looking to hire new employees or expand its operations. (J.A. 396; *see also* J.A. 212-213.)

Section 203-e has never been enforced against plaintiff, either by defendants or a private party. (J.A. 399.) Nor have defendants enforced or threatened to enforce § 203-e against any other employer. (J.A. 276, 282, 288.) The statute thus has little if any enforcement history.

## C. Proceedings Below

### 1. The Complaint and the Prior Appeal

In 2020, Evergreen and its then-President Chris Slattery commenced this lawsuit against New York's Governor, Attorney General, and Labor Commissioner. (ECF No. 1.) Plaintiffs asserted that § 203-e violated their First Amendment rights to expressive association, freedom of speech, and free exercise of religion; plaintiffs further alleged that the statute was unconstitutionally vague. (ECF No. 1 at 14-23.) Plaintiffs alleged that they did not intend to comply with the law and sought declaratory relief, as well as an injunction barring the law's enforcement against them. (ECF No. 1 at 13, 23.)

The complaint did not challenge or even reference § 203-e's access provision—*i.e.*, the provision that requires employers to obtain prior

11

written consent before accessing an employee's personal reproductive health information. *See* N.Y. Labor Law § 203-e(1). Nor did the complaint challenge or reference § 203-e's provision creating a private cause of action. *See id.* § 203-e(3).

Defendants moved to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim, and the district court granted the motion. *See Slattery v. Cuomo*, 531 F. Supp. 3d 547, 558, 573 (N.D.N.Y. 2021).

On appeal, this Court reversed the district court's dismissal of plaintiffs' expressive-association claim but affirmed the dismissal of plaintiffs' three other claims. *See Slattery v. Hochul*, 61 F.4th 278, 295 (2d Cir. 2023). Regarding the expressive-association claim, the Court concluded that, weighing all reasonable inferences in plaintiffs' favor, plaintiffs had plausibly alleged a significant burden on their right of expressive association that would not survive strict scrutiny. *Id.* at 286, 290-91. Defendants had not contested plaintiffs' standing at that stage, and this Court's decision in *Slattery* did not address the issue, either. *See id.* at 286-95.

12

## 2. The Parties' Cross-Motions for Summary Judgment and the District Court's Decision

Following remand, plaintiff Slattery died, and Evergreen became the sole plaintiff. (J.A. 37.) The parties engaged in discovery and thereafter filed cross-motions for summary judgment.

Defendants argued that, based on the developed factual record, plaintiff lacked standing, its claim was unripe, and its claim failed on the merits in any event. (ECF No. 54-9 at 14-33.) Plaintiff argued that it was entitled to judgment on its claim and a permanent injunction enjoining § 203-e's enforcement against it. (ECF No. 53-1 at 16-31.)

The district court (Nardacci, J.) granted defendants' motion and denied plaintiff's motion as moot. (Special Appendix ["S.A."] 18.) The court held that the plaintiff's claim failed for lack of standing and ripeness. (S.A. 4-18.) The district court observed that to have standing to bring a pre-enforcement claim, plaintiff must establish both that (1) it intends "to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by statute" and (2) there exists "a credible threat of imminent enforcement by a government defendant." (S.A. 10 [quotation marks and alterations omitted].) The court held that plaintiff's vague assertion that it intends to "some day" violate § 203-e by

13

taking adverse employment action based on employee's reproductive health decision is "insufficiently concrete to support standing." (S.A. 11, 14.) The court noted that, since plaintiff's founding in 1985, plaintiff has never taken such action on that basis. (S.A. 12, 15.)

Further, the court reasoned that the "hypothetical chain of events" that could lead to plaintiff taking such action for the first time in its 40-year history was "fatally attenuated." (S.A. 15.) Given that plaintiff screens applicants for employment for their commitment to its pro-life mission, it was unlikely that one of plaintiff's employees would make a reproductive health decision that contravened plaintiff's mission. (S.A. 14.) Even if an employee made such a decision, it was unlikely that plaintiff would learn of the decision because plaintiff does not generally ask employees about their reproductive health decisions. (S.A. 14.) And plaintiff had admitted its satisfaction with its current staff, further reducing the likelihood that it would violate § 203-e imminently. (S.A. 14.)

The court then observed that, even assuming "without holding" that § 203-e applies not just to employees but also to applicants for employment (S.A. 12 n.7), plaintiff failed to cite evidence that it would refuse to

14

hire an applicant in a manner that violates § 203-e (S.A. 12). Plaintiff admitted that it has hired, and would continue to hire, applicants who have had abortions. (S.A. 13.) Further, as plaintiff conceded, it had declined to hire certain applicants "because of their *positions* related to reproductive health decisions," rather than the decisions themselves. (S.A. 12.) That evidence made clear that plaintiff makes employment decisions based on an applicant's positions or beliefs, and making decisions on that basis is "not forbidden by § 203-e." (S.A. 13.)

The district court next "assume[d] without holding" that plaintiff's interview process would violate § 203-e's access provision (S.A. 15 n.11), which prohibits "accessing" an employee's personal reproductive health information without prior written consent. The district court noted that plaintiff intends to ask future job applicants about "their experience with abortion"; the court then assumed that such a question could constitute impermissible access of an employee's reproductive health information. (S.A. 15.)

The court nonetheless held that plaintiff lacked standing because the evidence failed to suggest that it faced a credible threat of imminent enforcement based on the access provision or any other provision of

15

§ 203-e. (S.A. 16-18.) As the court noted, the mere existence of a statute prohibiting certain conduct, by itself, does not show that a plaintiff faces a threat of imminent enforcement by defendants. (S.A. 17.) Rather, in assessing whether there is a requisite level of threat, courts look at factors such as past enforcement history and whether a plaintiff has been threatened with enforcement. (S.A. 17.) In this case, plaintiff failed to proffer evidence sufficient to suggest that it faced a credible threat of imminent enforcement because defendants have not enforced § 203-e against any employer, let alone plaintiff. Nor did plaintiff identify any instances where defendants even threatened to enforce § 203-e since the law's passage in 2019. (S.A. 16-18.)

The court further held that plaintiff's claim was not ripe for the same reasons that it lacked standing. Section 203-e's enforcement against plaintiff depended solely upon "contingent future events that may not occur as anticipated, or indeed may not occur at all." (S.A. 16-17 n.12 [quotation marks omitted].)

Because the district court disposed of the case on the grounds of standing and ripeness, it did not address the merits of plaintiff's expressive-association claim.

This appeal followed.

## D.    Relevant Proceedings in Other Cases

### 1.    This Court's Intervening Decision in *CompassCare*

After the parties in this case had fully briefed the cross-motions for summary judgment, this Court issued its decision in *CompassCare v. Hochul*, 125 F.4th 49 (2d Cir. 2025). The plaintiffs in that case included a pregnancy care center known as CompassCare and alleged, among other claims, an expressive-association challenge to § 203-e. *See CompassCare*, 125 F.4th at 54, 56. (CompassCare's CEO is Reverend Harden who is also Evergreen's president. [J.A. 130.])

In *CompassCare*, this Court clarified "the scope of an employer's associational rights" with respect to its employees—an issue that this Court had not explicitly addressed in *Slattery*. 125 F.4th at 58-59. The Court explained that an employer's associational rights are "not unlimited" and do not "permit an employer *generally* to discriminate in its employment practices—potentially violating the statutory or constitutional rights of employees and applicants." *Id.* at 61. To assert an expressive-association claim, an employer must show that a law "threatens its very mission not only in a vague and generalized sense, but in the

17

context of a specific employment decision." *Id.* This showing "presumably requires assessment" of (1) the responsibilities of the position at issue and (2) the employee's particular conduct that renders the employment of "that person, in that position, a threat to the employer's mission." *Id.*

The *CompassCare* Court remanded the plaintiffs' expressive-association claim to the district court to consider in the first instance. *Id.* at 62. On remand, those plaintiffs voluntarily dismissed their claim. *See* Notice of Joint Stipulation of Dismissal, *CompassCare v. Hochul*, No. 19 Civ. 1409 (N.D.N.Y. April 2, 2025), at ECF No. 73.

### 2.    Plaintiff's Challenge to New York City's Local Law Being Heard in Tandem with this Appeal

In 2020, plaintiff filed in the United States District Court for the Eastern District of New York a lawsuit challenging a New York City law that similarly prohibits employment discrimination based on an employee's reproductive health decisions; plaintiff alleged in that case, among other claims, that the law—Local Law 20—violates its right of expressive association. *See Evergreen Ass'n, Inc. v. City of New York*, No. 20 Civ. 0580, 2025 WL 416903, at *3-*5 (E.D.N.Y. Feb. 6, 2025).

On cross-motions for summary judgment, the district court dismissed the case for lack of standing and ripeness. *Id.* at *1. Relying in part on the district court's analysis in this case, the court held that plaintiff failed to proffer evidence sufficient to suggest that Local Law 20's enforcement was sufficiently imminent. *Id.* at *10-*13. The court noted that plaintiff had admitted that in its 40-year history, "[n]o employee, intern, or volunteer of plaintiff has ever been fired or disciplined for having an abortion, using contraceptives, or otherwise failing to adhere to plaintiff's definition of 'sexual morality.'" *Id.* at *10. And the record demonstrated that it was speculative whether plaintiff would do so in the future. It was unlikely either that any of plaintiff's employees would make a reproductive health decision that contravened its values or that plaintiff would even learn of any such decision. *Id.* at *10-*11. Plaintiff's assertions that it faced a threat of future enforcement therefore amounted "to speculation about a series of improbable events all occurring." *Id.* at *12.

For that same reason, the court held that plaintiff's claim was not ripe. There was no concrete evidence suggesting that plaintiff would likely violate Local Law 20 or that Local Law 20 would likely be enforced

19

against it. *Id.* at \*14. The court reasoned further that prudential ripeness considerations also weighed against the exercise of jurisdiction: Given the speculative nature of plaintiff's alleged injury, the court "cannot conclude that [plaintiff] will suffer any significant hardship if its request for relief is denied at this time." *Id.*

Plaintiff appealed from the district court's judgment in that case. This Court ordered that plaintiff's appeal in that case be heard in tandem with this appeal.

## STANDARD OF REVIEW

This Court reviews summary judgment decisions de novo. *Hayes v. Dahlke*, 976 F.3d 259, 267 (2d Cir. 2020). Summary judgment is warranted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To show a genuine dispute, the non-movant must provide "hard evidence" from which "a reasonable inference in [its] favor may be drawn." *Hayes*, at 267 (quotation marks omitted). "Conclusory allegations, conjecture, and speculation," *id.* (quotation marks omitted), as well as the existence of a mere "scintilla of evidence in support of the [non-movant's]

20

position," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986), are insufficient to create a genuinely disputed fact.

## SUMMARY OF ARGUMENT

The district court properly granted summary judgment in defendants' favor because plaintiff lacks standing to bring this pre-enforcement challenge, and because the challenge is not ripe. As the district court correctly reasoned, plaintiff failed to proffer evidence sufficient to suggest that there was any imminent threat of enforcement of § 203-e against it. Indeed, it is entirely speculative whether plaintiff will violate § 203-e's anti-discrimination provision by taking adverse employment action based on an employee's reproductive health decision. In its 40-year history, plaintiff has *never* taken such action on that basis. And nothing in the record suggests that the future will be any different. Plaintiff carefully vets every employee it hires to ensure that every employee shares its pro-life beliefs. It is thus exceedingly unlikely that any of its six employees would make a reproductive health decision that contravenes those beliefs. And even if an employee made such a decision, it is unlikely that plaintiff would learn of that decision, given the evidence establishing

21

that plaintiff does not track its employees' adherence to its beliefs in their personal lives.

Even assuming, as the district court did, that the statute protects applicants for employment, it is speculative whether plaintiff would refuse to hire applicants based on their reproductive health decisions. Plaintiff has repeatedly hired individuals who have had abortions. And plaintiff failed to cite a single instance when it refused to hire an applicant based on the applicant's reproductive health decision. Rather, as plaintiff admits, it has refused to hire applicants because of their beliefs about reproductive health decision-making. But nothing in § 203-e bars plaintiff from making employment decisions based on an applicant's beliefs.

Nor has plaintiff proffered any particularized evidence suggesting that it would face a credible threat of imminent enforcement in any event. Although § 203-e was passed in 2019, defendants have never enforced or threatened to enforce the law against any employer, let alone against plaintiff. Because it is speculative whether § 203-e will be enforced against plaintiff, plaintiff lacks standing to challenge that statute and, for the same reasons, its claim is not ripe for review.

22

If the Court nonetheless concludes that plaintiff's claim is justiciable, it should do one of two things: It should remand to the district court to consider in the first instance defendants' motion for summary judgment on the merits of plaintiff's claim. This Court's settled practice upon reversal is to remand if the district court had resolved a case only based on threshold questions. Remand would be especially appropriate here, given that the parties conducted discovery and briefed their cross-motions for summary judgment before this Court issued its decision in *CompassCare*, which clarified the "scope of an employer's freedom of expressive association." 125 F.4th at 58. Alternatively, the Court could affirm the judgment below on the ground that defendants are entitled to summary judgment on the merits of plaintiff's claim because § 203-e satisfies strict scrutiny—the highest form of scrutiny that could apply.

In no event, however, should the Court disturb the district court's judgment denying summary judgment to plaintiff, let alone grant summary judgment in plaintiff's favor. Plaintiff's motion was properly denied because plaintiff failed to show that—as a matter of law—it either has standing to bring this pre-enforcement challenge or should prevail on the merits of its expressive-association claim. Indeed, as to the merits, a

23

reasonable trier of fact could find that § 203-e does not severely burden plaintiff's associational rights and thus should be subject only to rational-basis review—a deferential standard that § 203-e indisputably satisfies.

## ARGUMENT

## POINT I

**THE COURT SHOULD AFFIRM ON THE GROUND THAT PLAINTIFF'S CLAIM IS NOT JUSTICIABLE**

### A. Plaintiff Lacks Standing to Bring a Pre-Enforcement Challenge to a Law That It Is Unlikely to Violate.

The district court correctly held that plaintiff lacks standing. (S.A. 11-18.) To establish standing, a plaintiff must show that it "has suffered an injury in fact that is fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Haaland v. Brackeen*, 599 U.S. 255, 291-92 (2023) (quotation marks omitted). An injury in fact "must be actual or imminent, not speculative— meaning that the injury must have already occurred or be likely to occur soon." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024). Assertions that are "too speculative" or merely assert "possible future injury" do not suffice. *Clapper v. Amnesty Int'l*, 568 U.S. 398, 409 (2013) (quotation marks omitted).

Where, as here, a plaintiff asserts a pre-enforcement challenge to a statute, the plaintiff has standing only if it can establish that future enforcement is "sufficiently imminent." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014). To make this showing, a plaintiff must establish both that (1) the plaintiff intends to engage in "'conduct arguably affected with a constitutional interest, but proscribed by a statute,'" and separately that (2) there exists a "'credible threat' of imminent enforcement, whether criminal or civil, by a government defendant." *Elias Bochner, 287 7th Ave. Realty LLC v. City of New York*, 118 F.4th 505, 518 (2d Cir. 2024) (quoting *Susan B. Anthony List*, 573 U.S. at 159).

Further, a plaintiff's burden to establish standing increases as the litigation proceeds. *See id.* On summary judgment following discovery, a plaintiff may no longer rest on "mere allegations" of injury. *Id.* at 519 (quotation marks omitted). The plaintiff instead has the "heightened burden" of adducing "factual evidence" that could support "a credible threat of imminent and redressable enforcement injury." *Id.* at 522, 526.

As explained below, plaintiff lacks standing because § 203-e's enforcement against it is not sufficiently imminent. Plaintiff's assertion that it intends someday to violate § 203-e is based on speculation about

contingent future events that are unlikely to occur. And in any event plaintiff does not face a credible threat of imminent enforcement by any defendant.

### 1. Plaintiff Failed to Proffer Concrete, Non-Speculative Evidence That It Will Violate § 203-e's Anti-Discrimination Provision in the Near Future.

Plaintiff lacks standing to challenge § 203-e's anti-discrimination provision, which prohibits taking adverse employment action based on employees' or their dependents' reproductive health decisions. *See* N.Y. Labor Law § 203-e(2)(a).

Preliminarily, plaintiff admits that it does not make employment decisions based on the reproductive health decisions of the *dependents* of any employee. (J.A. 398.) Indeed, plaintiff does not argue otherwise in its brief and thus has abandoned any claim based on its employees' dependents. *See, e.g.*, *Hussein v. Maait*, 129 F.4th 99, 123 (2d Cir. 2025).

Plaintiff instead bases its claim to standing on its purported intent to take adverse action some day based on an *employee's* reproductive health decision. That assertion rests on speculation and fails to suggest such action is imminent—*i.e.*, "likely to occur soon." *All. for Hippocratic*

26

*Med.*, 602 U.S. at 381. As the record establishes, although plaintiff has operated continuously for 40 years and maintained multiple offices within New York and elsewhere (J.A. 48, 129), plaintiff has *never* taken adverse action based on an employee's reproductive health decision (J.A. 394-395). And, as plaintiff admits (J.A. 398), it has not changed its operations in any way because of § 203-e. *See All. for Hippocratic Med.*, 602 U.S. at 391 (finding lack of standing in part because plaintiffs "have not identified any instances in the past where" the complained-of conduct has occurred).

Plaintiff nonetheless asserts that—for the first time in its 40-year history—it intends to take adverse action against an employee who "procure[s] an abortion." (Br. at 22.) This assertion, however, rests on several improbable events, none of which are likely to occur, and thus cannot support a finding of an imminent injury. *See, e.g.*, *Fac. v. New York Univ.*, 11 F.4th 68, 77 (2d Cir. 2021) (no standing where alleged harm rests on "uncertain future action").

For one thing, plaintiff's theory of standing is contingent on the decisions of third parties—*i.e.,* its employees. As the Supreme Court has cautioned, courts should be "reluctant to endorse standing theories that

27

require guesswork as to how independent decisionmakers will exercise their judgment." *Clapper*, 568 U.S. at 414. Plaintiff's theory rests on such guesswork: It requires speculating whether one of plaintiff's handful of employees will make a reproductive health decision that contravenes plaintiff's values.

Moreover, it is exceedingly unlikely that an employee would make such a decision because plaintiff is careful to employ solely those who share its beliefs. As Reverend Harden testified, plaintiff makes clear that it only seeks to hire like-minded individuals. (J.A. 204, *see* J.A. 165, 236.) Plaintiff's job postings operate as a "big filter" for potential candidates, specifying that plaintiff only employs "pro-life people." (J.A. 139.) And the interview process vets applicants to ensure that employees' beliefs align with plaintiff's "pro-life values." (J.A. 140-141, 377.)

Accordingly, plaintiff relies solely on conjecture in arguing (Br. at 26) that it may someday be "infiltrated by an employee that violates its mission." Plaintiff proffered no evidence that any such infiltration has ever happened. As the district court noted (S.A. 12), plaintiff failed to identify a single employee in its 40-year history whom it disciplined because of that employee's reproductive health decision, let alone because

28

that decision contravened plaintiff's mission. *See Evergreen Ass'n,* 2025 WL 416903, at \*10 (noting same). Plaintiff also admits that it has "no concerns" that any current employees would act contrary to its mission and that it is not seeking to hire any new employees (J.A. 396), an admission that renders its purported fear of infiltration still more fanciful.

Even if one of plaintiff's employees someday makes a reproductive health decision that contravenes plaintiff's mission, plaintiff can only speculate whether it would ever learn of that decision. Plaintiff proffered no evidence suggesting it has a policy or practice of monitoring whether employees adhere to plaintiff's values in their personal lives. On the contrary, Reverend Harden explained that plaintiff relies on the "honor system." (J.A. 197-198, 210.)

And even if plaintiff learned that an employee made a reproductive health decision that contravened its mission, it is unclear whether plaintiff would discipline that employee and thereby violate § 203-e. The evidence establishes that what action plaintiff would take in any such hypothetical would depend on the circumstances. Plaintiff makes clear that it will "respect the decision of the parents" as to whether to obtain an abortion when "continued pregnancy is reasonably expected to precip-

29

itate the mother's immediate and literal death." (J.A. 82.) And plaintiff employs individuals who have had abortions when they are sufficiently repentant. (J.A. 206, 237; *see also* ECF No. 56 at 15 [Pl. Mem. of Law] [noting that an "unrepentant decision to have or help procure an abortion may reveal an unbridgeable gap between an employee" and plaintiff].)

Nor does plaintiff proffer any concrete, non-speculative evidence to suggest it would violate § 203-e, even assuming, as the district court did, that the statute's anti-discrimination provision applied not just to plaintiff's current employees but also future applicants for employment.[4]

---

[4] As explained *infra* at 42-43, § 203-e protects "employees"—a term that is best read to encompass only current employees and not applicants for employment. To date, no New York court has yet addressed the scope of the protection afforded by § 203-e. And this Court need not resolve whether § 203-e applies to applicants for employment because, even assuming the law arguably applies to such applicants, plaintiff lacks standing for the reasons set forth in this brief. *See infra* at 31, 34-35.

If, however, this Court finds that any question regarding § 203-e's scope would be determinative of plaintiff's standing, it should certify that question to the New York Court of Appeals. *See, e.g.*, *Beck v. Manhattan Coll.*, 136 F.4th 19, 25 (2d Cir. 2025). Certification in such a circumstance would accord with the Supreme Court's instruction that federal courts should certify questions when doing so would ensure that any conflict "between state law and the First Amendment is not purely hypothetical." *McKesson v. Doe*, 592 U.S. 1, 6 (2020); *see, e.g.*, *Indiana Right to Life Victory Fund v. Morales*, 66 F.4th 625, 633 (7th Cir. 2023) (certifying state law question that could be dispositive of plaintiff's standing to bring pre-enforcement challenge).

(S.A. 12 n.7 [noting that a plaintiff need only show its conduct is "arguably proscribed" by challenged law, not "in fact proscribed"].) For one thing, plaintiff has repeatedly hired people who have had abortions. (J.A. 206.)

For another, plaintiff failed to identify a single applicant who it refused to hire because of that applicant's reproductive health decisions. Rather, plaintiff hires its employees based on their *beliefs* about reproductive health decisions, not the decisions themselves. As plaintiff admitted in the district court and again on appeal, it has refused to hire applicants because of the individual's "*positions* related to reproductive health decisions." (S.A. 12; Br. at 13 [emphasis added].) Section 203-e, however, does not prohibit plaintiff from making employment decisions based on an applicant's beliefs or positions. Thus, as the district court held (S.A. 12-13), plaintiff can only speculate that it will refuse to hire an applicant based on the applicant's reproductive health decisions.

Accordingly, plaintiff's assertion that it will—for the first time in its 40-year history—take adverse employment action based *not* on an individual's beliefs but rather on that individual's reproductive health decisions, and thereby violate § 203-e, rests on sheer speculation about

31

the independent decisions of third parties and uncertain future events. Plaintiff thus lacks standing to challenge Labor Law § 203-e's anti-discrimination provision. *See* N.Y. Labor Law § 203-e(2)(a).

### 2. Plaintiff's Reliance on § 203-e's Other Provisions to Assert That It Will Likely Violate the Statute Is Unpreserved and Meritless.

Although plaintiff seeks to rely on three other provisions of § 203-e to support its claim of standing to assert its expressive-association claim, plaintiff's arguments based on these provisions are waived and meritless.

First, plaintiff's reliance on § 203-e's access provision—N.Y. Labor Law § 203-e(1)—as a basis for standing is misplaced. This provision specifies that an employer must receive an employee's "prior informed affirmative written consent" before "accessing an employee's personal information regarding the employee's or the employee's dependent's reproductive health decision making." N.Y. Labor Law § 203-e(1). According to plaintiff (Br. at 28-29), because it plans to ask future job applicants about their "experience with abortion," it has a concrete intent to violate the access provision.

That argument is unavailing. Preliminarily, plaintiff waived reliance on the access provision to establish standing to assert an expressive-

32

association claim. Plaintiff did not even cite the provision in its complaint, much less allege there that the provision injured it in any way. (*See* ECF No. 1 at 1-24.) Nor did plaintiff's briefs in the prior appeal suggest that it was basing its expressive-association claim in any part on the access provision; rather, its briefing cited this provision only once in its *reply* brief to support a *different* claim—a free-speech claim that this Court held was properly dismissed.[5] *See Slattery*, 61 F.4th at 291-92. Accordingly, this Court's analysis of the expressive-association claim did not refer to the access provision; instead, it remanded the matter to the district court to consider plaintiff's expressive-association challenge to § 203-e's anti-discrimination provision. *See id.* at 288-91. This Court should not entertain any claim based on this provision for the first time on this appeal. *See Agosto v. New York City Dep't of Educ.,* 982 F.3d 86, 97 n.3 (2d Cir. 2020).

Even now, in its brief on this appeal, plaintiff does not suggest that its expressive-association claim is based in any part on the access

---

[5] Opening Brief of Appellants, *Slattery*, 61 F.4th 278 (No. 21-911), 2021 WL 2456513; Reply Brief of Appellants at 22, *Slattery*, 61 F.4th 278 (No. 21-911), 2021 WL 4052672, at \*22.

provision. Plaintiff does not argue that obtaining an applicant's written consent before accessing that applicant's personal reproductive health information would burden its associational rights, much less cite evidence to support any such argument. (Br. at 40-54.) The access provision thus does nothing to establish plaintiff's standing to assert its expressive-association claim.

In any event, plaintiff's reliance on the access provision is meritless because plaintiff failed to proffer any concrete evidence suggesting that it will even arguably violate the provision. Contrary to plaintiff's assertion (Br. at 29), the district court did not hold that plaintiff's interview process "currently violates" the access provision. The court merely "assume[d] without holding" that it arguably does. (S.A. 15 n.11.)

The court's assumption was unfounded, even assuming § 203-e arguably extends to job applicants, which it likely does not. Asking applicants about their "experience with abortion" is not "accessing" their reproductive health information within the meaning of § 203-e. In responding to the question, an applicant need not—and may not—reveal anything about that applicant's own decisions. Plaintiff's questioning is vague and intentionally open-ended. As Reverend Harden explained, the

34

question is meant to start a "dialogue" to explore the basis for a person's pro-life convictions. (J.A. 141-142.) The applicant therefore may talk only about the conduct of others, such as that applicant's parents or former patients who may have considered abortions. (J.A. 143-144.) Plaintiff can thus only speculate that asking an applicant about the applicant's "experience with abortion" would reveal any personal reproductive health information, let alone constitute "access[]" to such information without the applicant's consent.

Second, plaintiff seeks to rely on the law's no-waiver provision— Labor Law § 203-e(2)(b)—but that reliance is equally misplaced. The no-waiver provision bars employers from requiring an employee to "sign a waiver or other document which purports to deny an employee the right to make their own reproductive health care decisions." N.Y. Labor Law § 203-e(2)(b). Plaintiff argues that it has already violated this provision by asking its employees to sign a form that sets forth plaintiff's "Statement of Position, Faith & Principle." (*See* Br. at 31; *see* J.A. 82-85 [template form].)

But plaintiff similarly waived any claim that the no-waiver provision implicates its expressive-association right. In its complaint, plaintiff

35

did not allege that the no-waiver provision implicated its expressive-association right. (*See* ECF No. 1 at 22-24.) And in the prior appeal, plaintiff relied on the no-waiver provision only in support of its now-dismissed free-speech claim. *See Slattery*, 61 F.4th at 291 (rejecting plaintiff's argument that the provision is a "content-based speech regulation"). Plaintiff cannot now belatedly use that provision to confer standing to assert its expressive-association claim. *See Agosto,* 982 F.3d at 97 n.3.

In any event, plaintiff's use of the statement-of-position form does not even arguably violate the no-waiver provision. Nothing in the form suggests that, by signing the form, an employee agrees to relinquish any right or causes of action that the employee may have under the law. (J.A. 82-85.) Nor does the form state that an employee will be disciplined for personally having an abortion or using birth control. (S.A. 14.)

Although plaintiff notes (Br. at 31-32 [citing J.A. 82]) that the form asks employees to agree to "uphold" plaintiff's "positional statements," including its position that abortion claims innocent lives, § 203-e does not prohibit plaintiff from seeking such agreement from its employees. Section 203-e, this Court has explained, does not "prohibit Evergreen from requiring employees to express its stated position on [reproductive

36

health] issues." *Slattery*, 61 F.4th at 294. And Reverend Harden's testimony confirms that the form was never intended to constitute a waiver of rights. As he explained, plaintiff began using the form to ensure that employees "understood [plaintiff's] positions" (J.A. 187)—an objective that § 203-e in no way proscribes.

Third, plaintiff seeks to rely on the provision that grants employees a private right of action, but that reliance fares no better. The subject provision specifies that in a civil action alleging a violation of § 203-e, a court may "afford injunctive relief against any employer that commits or proposes to commit a violation of the provisions of this section." N.Y. Labor Law § 203-e(3)(b). Plaintiff argues (Br. at 29) that its "statement of intent to hire and fire in accordance with its beliefs and mission" is sufficient to show it is *currently* violating § 203-e.

That argument is both waived and meritless. Plaintiff waived any challenge to the private-right-of-action provision by failing to challenge it in its complaint. (*See* ECF No. 1 at 22-24.) Regardless, the remedial provision merely specifies what kind of relief a court may grant *if* an employee brings a civil action alleging a violation. *See* N.Y. Labor Law § 203-e(3)(b). It does not constitute a substantive prohibition that

37

independently proscribes plaintiff's conduct. Thus, as the district court explained, the remedial provision does not relieve plaintiff of its burden to cite non-speculative evidence that it intends to violate § 203-e. (S.A. 11 n.6.)

In sum, although plaintiff insists that "actions speak louder than words" (Br. at 26), it has failed to identify any single instance when it acted in a manner that would violate § 203-e. Nor has plaintiff "offered any persuasive evidence or reason to believe that the future will be different." *See All. for Hippocratic Med.*, 602 U.S. at 391. Plaintiff lacks standing on this ground alone.

### 3. Plaintiff Does Not In Any Event Face a Credible Threat of Imminent Enforcement by Any Defendant.

The district court also correctly held that, even if plaintiff had proffered evidence suggesting that it would likely violate § 203-e in the near future, its claim to standing would nonetheless fail because the record does not suggest that plaintiff faced a credible threat of imminent enforcement. (S.A. 16-18.) To show such a threat, the plaintiff must have "an actual and well-founded fear" that the law will be enforced against

38

the plaintiff in the event it violates that law. *Hedges v. Obama*, 724 F.3d 170, 200 (2d Cir. 2013) (quotation marks omitted).

Although this Court is "generally willing to presume that the government will enforce the law as long as the relevant statute is recent and not moribund," *Cayuga Nation v. Tanner*, 824 F.3d 321, 331 (2d Cir. 2016) (quotation marks omitted), it has never held that the presumption, in and of itself, is sufficient to establish the requisite level of threat, *see Adam v. Barr*, 792 F. App'x 20, 23 (2d Cir. 2019) (summary order); *see, e.g., Vitagliano v. Cnty. of Westchester*, 71 F.4th 130, 139 (2d Cir.), *cert. denied* 144 S. Ct. 486 (2023). Rather, courts consider factors such as the enforcement history of the law and whether it targets the plaintiff's conduct. *See Hedges*, 724 F.3d at 202-203; *see also, e.g., Picard v. Magliano*, 42 F.4th 89, 100 (2d Cir. 2022). Ultimately, the mere existence of a statute proscribing a plaintiff's intended conduct does not, by itself, establish the requisite credible threat, and determining whether a plaintiff has shown such a threat "necessarily depends on the particular circumstances at issue." *Knife Rts., Inc. v. Vance*, 802 F.3d 377, 384 (2d Cir. 2015).

39

Here, nothing in the record suggests that plaintiff faces a credible threat of imminent enforcement by defendants. Section 203-e took effect over five years ago—in 2019—and plaintiff admits that it has not changed its operations because of the law. (J.A. 398.) Nonetheless, during this time, no defendant has ever enforced or threatened to enforce § 203-e against *any* employer (J.A. 282, 288), let alone against plaintiff. *See, e.g.*, *Hedges*, 724 F.3d at 202 (holding that plaintiff lacked standing in part because of lack of prior enforcement or threats of enforcement).

Further, this is not a case "in which the law is aimed directly at plaintiff[]." *Id.* (quotation marks omitted). The law applies to all employers. *See* N.Y. Labor Law § 203-e. Although plaintiff asserts (Br. at 35) that the law was intended to target religiously motivated employers like plaintiff, this Court has already concluded otherwise. As it held in rejecting plaintiff's free-exercise claim, § 203-e does not target religion and is instead "generally directed at discrimination in the workplace and employee privacy." *Slattery*, 61 F.4th at 293.

There is no credence to plaintiff's assertion that Attorney General James "single[s] out crisis pregnancy centers for prosecution." (Br. at 36.) The only case plaintiff cites for the assertion is a single, unrelated false-

advertising lawsuit. *See People of the State of New York v. Heartbeat Int'l, Inc.* ("*Heartbeat Int'l*"), Index No. 451314/2024 (N.Y. Sup. Ct., N.Y. Cnty. 2024). Plaintiff is not a party to that lawsuit, which does not involve any provision of New York's Labor Law. This suit thus does not suggest plaintiff has standing.[6]

The cases plaintiff cites do not compel a contrary conclusion. Those cases involve a plaintiff who intends to perform a discrete act that is

---

[6] An appeal in a case related to *Heartbeat Int'l* is currently pending from the preliminary injunction rendered in *Nat'l Inst. for Fam. & Life Advocs. v. James* ("*NIFLA*"), 746 F. Supp. 3d 100 (W.D.N.Y. 2024), *appeal pending*, No. 24-2481 (2d Cir.). In *NIFLA*, several organizations, including crisis pregnancy centers, alleged that Attorney General James's pending state-court action in *Heartbeat Int'l* has chilled their plans to engage in the same advertising in which the *Heartbeat Int'l* defendants engage and thus violates the organizations' free-speech rights; these organizations further sought an injunction to enjoin the Attorney General from bringing a similar enforcement against them. *Id.* at 108, 111. Although the district court in *NIFLA* held that the plaintiff organizations had standing to assert their pre-enforcement free-speech claim, *id.* at 112, the court's analysis is readily distinguishable—and plaintiff here does not contend otherwise. Unlike the *NIFLA* plaintiffs, plaintiff here does not argue that § 203-e has chilled its First Amendment rights; on the contrary, plaintiff has affirmatively stated that it has not changed its operations or services due to § 203-e. (J.A. 398.) And unlike the *NIFLA* plaintiffs, plaintiff here cannot cite to any past example in which defendants have enforced § 203-e against it or *any* employer, let alone based on conduct that is similar to the conduct in which plaintiff allegedly intends to engage.

41

unambiguously proscribed by the challenged law. *See, e.g., Vitagliano*, 71 F.4th at 138-39 (plaintiff intending to enter buffer zones outside specific reproductive healthcare clinics targeted by the law). Under such circumstances, it makes sense for a court to presume that enforcement would be sufficiently imminent if the plaintiff were to violate the law.

That presumption of enforcement is inappropriate where, as here, a litigant relies on vague assertions about a general course of conduct that the challenged statute may not proscribe in the first place. For instance, as noted *supra* at 34, plaintiff contends that it asks job applicants about their "experience with abortion," a question that plaintiff contends violates § 203-e's access provision.

It is far from clear, however, that, as a matter of statutory interpretation, § 203-e's prohibition on "accessing" an employee's "personal information" without written consent would encompass asking job applicants about their prior experiences rather than accessing their health records. Further, as defendants have explained throughout this litigation, it is unclear whether any provision of § 203-e applies to job applicants at all. Whereas New York's other employment discrimination and labor law statutes expressly extend to refusals "to hire" or "applicants for employ-

42

ment,"[7] § 203-e contains no such language. Rather, § 203-e only applies to "employees"—a term that the Labor Law defines to mean "a mechanic, workingman or laborer working for another for hire," N.Y. Labor Law § 2(5). And that phrase is most naturally read to mean *currently* working for hire.

Given the ambiguity of § 203-e's scope, it would be inappropriate to base a finding of standing on any presumption that defendants will enforce § 203-e against plaintiff in connection with any of its hiring practices. And plaintiff has failed to cite any particularized, concrete evidence to support a contrary inference. Nor has it cited any such evidence suggesting that it faces a credible threat of imminent enforcement based on any of its other alleged conduct. Rather, plaintiff has relied solely on

---

[7] *See* N.Y. Labor Law § 201-d(2) (prohibiting employers from "refus[ing] to hire" or "employ" an "individual" based on non-work political activities); N.Y. Executive Law § 296(1)(a) (defining unlawful discriminatory practice as "refus[ing] to hire or employ" an "individual" based on certain characteristics); *see also* N.Y. Labor Law § 201-i(2) (prohibiting employers from requiring "any employee or applicant for employment" from disclosing certain personal account information); N.Y. Labor Law § 201-b(1), (2) (prohibiting employers from requiring any "employee" or "any applicant for employment" from paying for medical examination).

New York City's Local Law 20 similarly expressly prohibits refusals "to hire." *See* N.Y.C. Admin. Code § 8-107(1)(a)(2).

the existence of § 203-e itself, which is insufficient to show a credible threat of enforcement.

Plaintiff cannot salvage its claim by citing to § 203-e's private-right-of-action provision, N.Y. Labor Law § 203-e(3). To demonstrate standing, plaintiff must show an injury that is "fairly traceable to the challenged action of the *named defendants*." *Gazzola v. Hochul*, 88 F.4th 186, 202 (2d Cir. 2023), *cert. denied,* 144 S. Ct. 2659 (2024) (emphasis in original). A private party's enforcement of § 203-e, by contrast, is not fairly traceable to defendants and thus cannot support plaintiff's standing to seek relief against them. *See Elias Bochner,* 118 F.4th at 518 (standing requires "imminent enforcement, whether criminal or civil, *by a government defendant*") (emphasis added).

The cases plaintiff cites (Br. at 37-38) do not hold otherwise. Those cases involve statutes that, unlike § 203-e, provide a citizen-complaint procedure whereby "any person" could file a complaint that would necessarily trigger an investigation by the state agency. *See, e.g., Susan B. Anthony List*, 573 U.S. at 164 (citing Ohio Rev. Code § 3517.153(a)). As the Sixth Circuit has recognized, a private cause of action, in contrast to a citizen-complaint provision, does not increase the threat of govern-

44

mental enforcement. *See Christian Healthcare Centers, Inc. v. Nessel*, 117 F.4th 826, 850 (6th Cir. 2024).

In sum, the district court correctly dismissed for lack of standing.

## B.    Plaintiff's Claim Is Not Ripe for Review

The district court also correctly held that plaintiff's claim fails because it is not ripe for review. (S.A. 16 n.12.) The ripeness doctrine consists of "two overlapping threshold criteria for the exercise of a federal court's jurisdiction." *Revitalizing Auto Communities Env't Response Tr. v. Nat'l Grid U.S.A.*, 10 F.4th 87, 99 (2d Cir. 2021) (quotation marks omitted). Constitutional ripeness—the first criterion—"overlaps with the standing doctrine, most notably in the shared requirement that the plaintiff's injury be imminent rather than conjectural or hypothetical." *Lacewell v. Off. of Comptroller of Currency*, 999 F.3d 130, 149 (2d Cir. 2021) (quotation marks omitted). Prudential ripeness—the second criterion—considers "whether the claim is fit for judicial resolution and whether and to what extent the parties will endure hardship if decision is withheld." *Nat'l Grid U.S.A.*, 10 F.4th at 100.

Plaintiff's claim is neither constitutionally nor prudentially ripe. It is not constitutionally ripe for the same reasons that plaintiff lacks

45

standing: § 203-e's future enforcement against plaintiff is "merely speculative and may never occur." *Lacewell*, 999 F.3d at 150. This Court thus should not entangle itself "in abstract disagreements over matters that are premature for review." *See id.* (quotation marks omitted) (holding that plaintiff's claim was unripe for "substantially the same reasons" that plaintiff lacked standing).

Plaintiff's claim also lacks prudential ripeness. Section 203-e does not create "a direct and immediate dilemma" for plaintiff. *Simmonds v. I.N.S.*, 326 F.3d 351, 360 (2d Cir. 2003). Plaintiff has not changed its operations in any way due to § 203-e. (J.A. 398.) It has "no concerns" that any of its employees will act contrary to its mission; nor is it looking to hire new employees. (J.A. 396.) Plaintiff thus failed to proffer any evidence sufficient to suggest that "denying prompt judicial review would impose a substantial hardship on [it]." *Susan B. Anthony List*, 573 U.S. at 167-68.

46

## POINT II

### ALTERNATIVELY, THE COURT SHOULD EITHER REMAND TO THE DISTRICT COURT TO ADDRESS IN THE FIRST INSTANCE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON THE MERITS OR IT SHOULD AFFIRM ON THE MERITS

If the Court nonetheless concludes that plaintiff's expressive-association claim is justiciable, it should do one of two things: It should remand to the district court to address in the first instance defendants' motion for summary judgment on the merits of that claim. Or the Court could instead affirm on the alternative ground that defendants are entitled to summary judgment on the merits because § 203-e satisfies strict scrutiny—the highest form of scrutiny that could apply.

### A. The Court Should Follow Its Settled Practice by Remanding to the District Court to Address the Merits in the First Instance.

This Court is "a court of review, not of first view," *Havens v. James*, 76 F.4th 103, 123 (2d Cir. 2023) (quoting *Decker v. Nw. Env't Def. Ctr.*, 568 U.S. 597, 610 (2013)), and typically refrains "from analyzing issues not decided below." *Baltas v. Maiga*, 119 F.4th 255, 269 (2d Cir. 2024) (quotation marks omitted). When a district court dismisses a case solely on a threshold issue, and this Court reverses or vacates that dismissal,

47

this Court's practice is to remand to give the district court the opportunity to address the merits in the first instance. *See, e.g.*, *Cavanaugh v. Geballe*, 28 F.4th 428, 435 (2d Cir. 2022); *Atterbury v. U.S. Marshals Serv.*, 805 F.3d 398, 409 (2d Cir. 2015); *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 692 (2d Cir. 2013).

If this Court disagrees with the district court's justiciability ruling, it should adhere to that settled practice by reversing the judgment below and remanding to the district court to consider in the first instance defendants' motion for summary judgment on the merits of plaintiff's claim. Remand would be especially appropriate given that the parties conducted discovery and briefed their respective motions for summary judgment in the district court before this Court issued its decision in *CompassCare*, which clarified "the scope of freedom of expressive association in the employment context." 125 F.4th at 59. A remand would permit the district court to consider the import of that intervening decision in the first instance.

48

**B.** **The Court Could Instead Affirm Summary Judgment in Defendants' Favor on the Alternative Ground that Plaintiff's Claim Fails on the Merits.**

If the Court decides to address in the first instance defendants' motion for summary judgment on the merits of plaintiff's claim, the Court should affirm. In evaluating an expressive-association claim under the First Amendment, a court first assesses whether and the extent to which the challenged law burdens the plaintiff's associational rights. *See Jacoby & Meyers, LLP v. Presiding Justices*, 852 F.3d 178, 191 (2d Cir. 2017). Unless the law places a "severe burden on associational rights," the law is subject to rational-basis review, *id.* (quotation marks omitted)—a deferential standard that § 203-e indisputably satisfies. If, however, the law imposes a severe burden, then this Court applies a form of strict scrutiny. *Tabbaa v. Chertoff*, 509 F.3d 89, 101 (2d Cir. 2007). Under such scrutiny, the law is constitutional provided that "it 'serve[s] compelling state interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms.'" *Id.* at 102 (quoting *Roberts v. U.S. Jaycees,* 468 U.S. 609, 623 (1984)).

49

Even assuming § 203-e imposes a burden on plaintiff's right to expressive association that triggers strict scrutiny, § 203-e would satisfy such scrutiny.

New York has a compelling interest in protecting its residents' rights to privacy in "personal decisions relating to marriage, procreation, contraception, family relationships, child rearing, and education." *Lawrence v. Texas*, 539 U.S. 558, 573-74 (2003). The constitutionally protected right to privacy encompasses an "individual interest in avoiding disclosure of personal matters," as well as an "interest in independence in making certain kinds of important decisions." *Whalen v. Roe*, 429 U.S. 589, 599-600 (1977). The right protects "privacy in one's personal information, including information about one's body," *Hancock v. Cnty. of Rensselaer*, 882 F.3d 58, 65 (2d Cir. 2018), and extends to the disclosure of personal medical information, *Doe v. City of New York,* 15 F.3d 264, 267 (2d Cir. 1994). As this Court has observed, "there are few matters that are quite so personal as the status of one's health, and few matters the dissemination of which one would prefer to maintain greater control over." *Id.*

50

Eradicating discrimination is also "a compelling interest of the highest order," *Figueroa v. Foster,* 864 F.3d 222, 232 (2d Cir. 2017) (quotation marks omitted), and one that is "unrelated to the suppression of expression." *Roberts*, 468 U.S. at 624. The compelling interest in prohibiting employment discrimination in particular is grounded in the "grave harm" such discrimination creates for both individuals and the marketplace. *United States v. Burke*, 504 U.S. 229, 238 (1992); *see also CompassCare*, 125 F.4th at 60 (noting that employment "is central to the well-being of the nation and its citizens"). For individuals, employment discrimination deprives employees of their livelihood and injures their sense of self-worth. *See, e.g., E.E.O.C. v. R.G. & G.R. Harris Funeral Homes, Inc.*, 884 F.3d 560, 591-92 (6th Cir. 2018), *aff'd, Bostock v. Clayton County,* 590 U.S. 644 (2020).

Employment discrimination based on an individual's reproductive health decision is no exception. New York has enshrined in its State Constitution's Bill of Rights the right of its people to be free from "discrimination in their civil rights" based on "pregnancy, pregnancy outcomes, and reproductive healthcare and autonomy," among other protected traits. N.Y. Const., art. I, § 11(a)*; see also* N.Y. Executive Law

51

§ 296(1)(a) (prohibiting employment discrimination based on listed protected characteristics).

Section 203-e is narrowly tailored to the goal of furthering New York's compelling interests in protecting unwanted intrusions into privacy and combating discrimination in the workplace. Section 203-e's provisions do not extend beyond measures that combat such discrimination and protect privacy. Section 203-e(2)(a) prohibits such discrimination; § 203-e(1) protects employees from unwanted infringements into their personal reproductive health information; and § 203-e(2)(b) prevents employers from circumventing the statute by requiring employees to waive the right to make their own reproductive health decisions.

Indeed, the Supreme Court has observed that prohibitions on "discrimination" in employment decisions are "precisely tailored to achieve" the government's interest in "providing an equal opportunity to participate in the workforce." *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 733 (2014); *see also Roberts*, 468 U.S. at 628-29. Just so here.

Moreover, § 203-e is not unduly overinclusive because it necessarily accommodates a religious organization's need for autonomy in regulating even the private behavior of those employees who act as ministers.

52

Although the statute does not include an express exception for employees performing ministerial functions, the Legislature understood that the statute could not be applied to situations involving such employees as a result of the Supreme Court's decision in *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171, 188-90 (2012). (*See* J.A. 307-308 [Assembly floor debate].) And this Court has expressly recognized that if plaintiff were ever subject to suit under § 203-e, it could "raise the ministerial exception as a defense to a suit concerning a particular employee." *Slattery*, 61 F.4th at 293 n.9.

Plaintiff's counterarguments lack merits. It contends (Br. at 52) that New York's interests in combating employment discrimination and protecting employee privacy are not compelling because § 203-e's legislative history "reveals no actual problem to be addressed." For support, plaintiff cites to a single passage in the legislative floor debates in which one of the law's sponsors "could not cite a single instance of employment discrimination based on reproductive health decision-making."

Plaintiff misstates the legislative record. The sponsor at issue—Representative Jaffee—in fact observed that discrimination based on reproductive health decisions "happens quite frequently." (J.A. 315

[Assembly floor debate].) She referred to "a number of incidents" in which employees were punished for their reproductive health decisions. (J.A. 306 [Assembly floor debate].) Constituents had informed her of such incidents but had asked her not to disclose their identities. (J.A. 331-332 [Assembly floor debate to predecessor bill that become § 203-e].) Thus, the Legislature had ample reason to find that employees remained "vulnerable to discrimination based on their reproductive health decisions." (ECF Nos. 22-2 at 2; ECF No. 22-3 at 2.)

In any event, plaintiff cites no precedent for the proposition that a government is constitutionally required to wait until a certain number of identified individuals have been harmed before it can show a compelling interest.

Nor is New York alone in recognizing the vital importance of eradicating employment discrimination based on a person's private reproductive health decisions. Numerous other States have enacted statutes that, like § 203-e, ban employment discrimination based on reproductive health decisions or the decision to obtain an abortion, including California, *see* Cal. Gov't Code § 12940(a); Illinois, Ill. Comp. Stat., ch. 775, §§ 5/1-103(O-2), (Q), 5/2-102(A); Michigan, Mich. Comp.

54

Laws §§ 37.2201(d), 37.2202(1)(a); Delaware, *see* Del. Code tit. 19, § 711(j); Hawaii, *see* Haw. Rev. Stat. § 378-2(a)(1); as well as the District of Columbia, *see* D.C. Code § 2-1401.05(a). Plaintiff's mere say-so cannot countermand the democratic judgment of the legislative bodies that collectively represent tens of millions of our country's residents.

Next, plaintiff contends that defendants have not shown a compelling governmental interest in "coercing *Evergreen's* specific expression." (Br. at 51 [emphasis in original].) But the compelling-interest inquiry is not whether the government has "an interest in disturbing a company's workplace policies" or in requiring "organizations to act in a way that conflicted with their religious practice." *Harris Funeral Homes,* 884 F.3d at 591. Rather, the inquiry looks to whether the government has a compelling interest that *justifies* a regulation affecting such policies and practices. *See Simon & Schuster, Inc. v. Members of New York State Crime Victims Bd.*, 502 U.S. 105, 120 (1991) (rejecting argument that "take[s] the *effect* of the statute and posit[s] that effect as the State's interest" (emphasis in original)). And, as explained above, the State's interest in eradicating discrimination and protecting the privacy of

55

employees' medical decisions is compelling, and § 203-e indisputably furthers those interests.

Granted, the cases that plaintiff cites hold that a law cannot be regarded as supported by a compelling interest if the law "leaves appreciable damage to that supposedly vital interest unprohibited." *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 433 (2006) (quoting *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 547 (1993)). In this case, however, plaintiff has never argued that § 203-e is fatally underinclusive. Nor does plaintiff argue that this is a case in which the challenged statute provides exemptions without "compelling reason." *Fulton v. City of Philadelphia*, 593 U.S. 522, 542 (2021). On the contrary, the only exemption to § 203-e—the ministerial exception—is mandated by the First Amendment itself. *See Hosanna-Tabor*, 565 U.S. at 188-90. A constitutionally mandated exemption, which applies to various kinds of employment discrimination laws, does not render such laws fatally underinclusive under the First Amendment.

As for tailoring, plaintiff mistakenly contends (Br. at 54-55) that a viable less-restrictive alternative is available because the State could exempt plaintiff and similar religious employers from § 203-e's require-

56

ments. To qualify as a viable alternative, however, the alternative must be one that is "at least as effective in achieving the legitimate purpose that the statute was enacted to serve." *Ashcroft v. ACLU*, 542 U.S. 656, 665 (2004); *see, e.g.*, *Tabbaa*, 509 F.3d at 103-05. Plaintiff's proffered alternative—a wholesale exemption for plaintiff and similar religious employers—would not be as effective in achieving the statute's goals of preventing discrimination based on reproductive health decisions. Creating an exemption for a set of employers would undermine—rather than advance—the statute's very goals.

This Court's decision in *Slattery* does not compel a different conclusion. As this Court emphasized, its decision was based on plaintiff's factual allegations, which were accepted as true at the pleading stage. *See* 61 F.4th at 289-290. *Slattery* does not constitute law of the case or otherwise prevent the State from prevailing on summary judgment based on the evidentiary record that was developed for the summary judgment stage of the litigation. *See, e.g.*, *Maraschiello v. City of Buffalo Police Dep't*, 709 F.3d 87, 97 (2d Cir. 2013).

More particularly, *Slattery* was based on plaintiff's averment that § 203-e—like the law struck down in *Boy Scouts of Am. v. Dale*, 530 U.S.

57

640, 659 (2000)—would require plaintiff to employ someone "whose manifest views were at odds with a position taken by the [plaintiff's] existing members." *Dale*, 530 U.S. at 659 n.4 (quotation marks omitted). In such circumstances, the State's interest in § 203-e "gives way to the freedom of those in the association to join together" to express their own view. *Slattery*, 61 F.4th at 278.

The evidentiary record, however, refutes plaintiff's allegations regarding § 203-e's purported effect on its ability to convey its "pro-life" messaging. Although plaintiff alleged in its complaint that it intends to take adverse employment action against personnel "who choose to procure abortions," (ECF No. 1 at 13), the record now makes clear that plaintiff in fact willingly employs individuals who have had abortions. (*See* J.A. 206.) And plaintiff recognizes that such individuals who have chosen to procure abortions can still sincerely and effectively convey its message notwithstanding their prior personal health decisions. (J.A. 235-236.) Further, and contrary to plaintiff's allegations in the complaint, § 203-e does not require plaintiff to employ individuals whose views contradict its mission or who fail to fulfill their job duties. Plaintiff has

58

made, and can continue to make, employment decisions on that basis. *See supra* at 31.

The record thus confirms the precision of § 203-e: It advances New York's interest in eradicating discrimination and protecting an individual's right to privacy in their personal medical decisions while simultaneously respecting plaintiff's right to associate only with like-minded individuals.

## POINT III

### THE COURT SHOULD NOT DISTURB SO MUCH OF THE JUDGMENT BELOW AS DENIED SUMMARY JUDGMENT TO PLAINTIFF

If this Court were to address plaintiff's motion for summary judgment, it should affirm the denial of that motion. In reviewing plaintiff's motion, this Court must draw all inferences in favor of defendants. *See Hayes*, 976 F.3d at 267. Under that standard, plaintiff's motion was properly denied for either of two reasons.

First, plaintiff failed to establish as a matter of law that it has standing to bring this pre-enforcement challenge. Where, as here, a plaintiff's standing is contested, the plaintiff is entitled to summary judgment on that issue *only if* it can put forth evidence showing that there is

59

no genuine dispute as to facts that attest to the plaintiff's standing. *Lugo v. City of Troy*, 114 F.4th 80, 88 (2d Cir. 2024). For the reasons set forth *supra* at 26-44, plaintiff fell far short of making that showing. Rather, ample evidence demonstrates that plaintiff's alleged future injury is speculative and thus that it lacks standing. *See, e.g.*, *Elias Bochner*, 118 F.4th at 526 (vacating award of summary judgment in plaintiff's favor based on plaintiff's failure to "demonstrate standing through factual evidence of the [government's] likely enforcement" of the challenged law).

Second, plaintiff failed to establish as a matter of law that § 203-e violates its right to expressive association. Apart from the reasons set forth in Point II.B, plaintiff failed to establish an absence of genuine factual disputes on the threshold question whether § 203-e severely burdens its associational rights, as required to trigger strict scrutiny.

A law imposes a severe burden only if it "constitute[s] a direct and substantial interference with associational rights." *Tabbaa*, 509 F.3d at 89. Further, as this Court explained in *CompassCare*, "[i]t is not enough for an employer to claim that it holds particular views or interests, or even that it expresses such views through its work." 125 F.4th at 61. "In the workplace, expressive association rights are not unlimited" and do

not permit "an employer *generally* to discriminate in its employment practices—potentially violating the statutory or constitutional rights of employees and applicants." *Id.*

Rather, for an employer to show a cognizable burden on its associational rights, it must show that the law threatens its "very mission not only in a vague and generalized sense, but in the context of a specific employment decision." *Id.* This standard "presumably require[s] an assessment" of (1) "the responsibilities of the position at issue, including whether it is client-facing and whether it involves expressly or implicitly speaking for the organization," and (2) "the particular conduct or attribute of the employee that renders the employment of that person, in that position, a threat to the employer's mission." *Id.*

Plaintiff is not entitled to summary judgment because it failed to establish that § 203-e directly and substantially interferes with plaintiff's associational rights. It is entirely speculative whether § 203-e will force plaintiff to employ someone who, in plaintiff's view, would be unable to sincerely convey plaintiff's message. After all, § 203-e does not restrain plaintiff from making employment decisions based on an individual's beliefs, including when an individual's beliefs about reproductive health

61

decision-making do not align with plaintiff's beliefs. And plaintiff has failed to identify a single instance in the past where it has made an employment decision based on an individual's reproductive health decision, rather than that individual's beliefs. *See supra* at 27-28, 31.

Plaintiff has also failed to establish a severe burden because its motion is based on precisely the kind of vague and generalized assertions that this Court held were insufficient in *CompassCare*. Rather than describe the duties of any particular employee, plaintiff insists on appeal that "all" of its employees act as messengers of its mission. (Br. at 11-12.) A reasonable trier of fact could disagree. One employee—the material assistance coordinator—indisputably has *no* face-to-face interactions with any patients. (J.A. 393.) Further, a reasonable trier of fact could conclude plaintiff's medical professionals—the two ultrasonographers and two LPNs—engage in roles that are purely diagnostic rather than expressive. (*See* J.A. 391-392.) As Reverend Harden explained, plaintiff provides a "medical model of service." (J.A. 158, 394.) Consistent with its medical model, plaintiff does not train ultrasonographers to have any specific kind of conversation with patients other than to explain what a scan shows. (J.A. 148-149.)

62

63

On this record, then, a reasonable trier of fact could conclude that plaintiff failed to establish as a matter of law that § 203-e severely burdens its associational rights, in which case § 203-e is subject to the deferential rational-basis review—a standard that § 203-e indisputably satisfies. Plaintiff's motion for summary judgment was properly denied.

## CONCLUSION

Because the district court correctly held that plaintiff's claim was not justiciable, this Court should affirm the district court's judgment. If the Court disagrees with the district court's holding on justiciability, it should either remand to the district court or affirm on the alternative ground that plaintiff's claim fails on the merits. In no event should the Court disturb so much of the district court's judgment as denied plaintiff's motion for summary judgment in plaintiff's favor.

Dated:  Albany, New York
   July 25, 2025

           Respectfully submitted,

           LETITIA JAMES
            *Attorney General*
            *State of New York*
           Attorney for Appellees

        By:  */s/ Dustin J. Brockner*
           DUSTIN J. BROCKNER
BARBARA D. UNDERWOOD   Assistant Solicitor General
 *Solicitor General*
ANDREA OSER       The Capitol
 *Deputy Solicitor General*  Albany, New York 12224
DUSTIN J. BROCKNER    (518) 776-2017
 *Assistant Solicitor General*
   *of Counsel*

64

**CERTIFICATE OF COMPLIANCE**

Pursuant to Rule 32(a) of the Federal Rules of Appellate Procedure, Dustin J. Brockner, an employee in the Office of the Attorney General of the State of New York, hereby certifies that according to the word count feature of the word processing program used to prepare this brief, the brief contains 12,221 words and complies with the typeface requirements and length limits of Rule 32(a)(5)-(7) and Local Rule 32.1.

*/s/ Dustin J. Brockner*